```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

TYREE LAWSON                    :     CIVIL ACTION
                                :
                                :
         v.                     :
                                :
RYAN MCNAMARA, et al.           :     NO. 10-0382

## MEMORANDUM

Bartle, C.J.                                    November 12, 2010

Plaintiff Tyree Lawson ("Lawson"), acting pro se, brings claims for violation of his civil rights under 42 U.S.C. § 1983. The defendants are Ryan McNamara ("McNamara") and Thomas Kee ("Kee") who are Special Deputy United States Marshals assigned to the Violent Crimes Fugitive Task Force ("VCFTF"). Lawson asserts that McNamara and Kee used excessive force in effectuating his arrest and that his conviction for resisting arrest was fraudulent and designed to cover up the defendants' misconduct. He maintains he suffers from depression and a sleeping disorder as a result of his arrest and seeks monetary damages and injunctive relief.

Before this court is the motion of defendants to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, defendants seek summary judgment under Rule 56. Plaintiff has also filed a summary judgment motion.

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

We grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(2). We view the facts and draw all inferences in favor of the non-moving party. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

II.

The following facts are undisputed or taken in the light most favorable to Lawson. On April 17, 2008, he was sitting in his car parked on the corner of 5th and Annsbury Streets in Philadelphia. Sometime after 12:00 p.m., Kee and Special Deputy United States Marshal Dennis Watson ("Watson") arrived with a warrant for his arrest. He was wanted for attempted murder and various other state offenses stemming from a shooting related to a domestic dispute. Kee approached Lawson's vehicle and ordered Lawson to exit with his hands up. Lawson initially complied with this request to put his hands up but did not exit the vehicle. The vehicle had a broken door handle on the driver's side which prevented that door from being opened. Upon receiving radio notice regarding Lawson's whereabouts, McNamara and United States Marshal Steve Mason ("Mason") thereafter arrived on the scene and parked behind Lawson. Mason and McNamara then positioned themselves on foot behind the rear bumper of Lawson's vehicle.

At this point, the facts offered by the parties diverge. According to Lawson, Kee tried to pull him from his vehicle through the window. Lawson claims that Kee choked him during this struggle and told him to "shut da fuck up." While Lawson was struggling to break free, Kee allegedly yelled "Shoot! Shoot this piece of shit!" When Lawson succeeded in breaking free, McNamara fired his weapon. The bullet passed through the windshield but did not strike Lawson. Lawson, putting his

vehicle into reverse, collided with the police car parked behind him.  He then put the car into drive and began to accelerate.  Although he successfully fled the scene, he was apprehended later that afternoon.

The defendants challenge some of the facts offered by Lawson.  In his affidavit, Kee maintains that he did not choke Lawson and that his hands were always on Lawson's arms, hands, and shirt.  Kee denies yelling to the other officers to shoot Lawson.  The defendants differ from the plaintiff with regard to when the bullet was fired.  According to the defendants' affidavits, McNamara fired the shot after Lawson had already hit the police car behind him and was pulling away.  Mason, who had been standing between the two cars, jumped to avoid being hit by Lawson and was knocked off his feet.  McNamara maintains that he did not fire the shot until after he heard the thud of Watson falling to the ground.  He believed that one of the officers had been hit by Lawson's vehicle.  Because the incident took place near a busy intersection, he was concerned that nearby members of the general public were in danger.

On July 19, 2009, Lawson pleaded guilty in the District Court to three counts of resisting arrest by use of a dangerous weapon (his vehicle), in violation of 18 U.S.C. § 111(a)(1) & (b).  See United States v. Lawson, Crim. A. No. 08-276 (E.D. Pa.).  Lawson was sentenced to twenty-one months' imprisonment on each count to run consecutively to his state conviction.  At his plea colloquy, Lawson agreed to a version of the facts that is

substantially at odds with the declaration he now offers in support of his motion for summary judgment. Notably, Lawson agreed during his plea colloquy that he "forcibly struggled" and was "revving his vehicle by hitting the accelerator" during the confrontation with Kee. He also agreed that McNamara fired his weapon only after Lawson struck the car behind him and began to drive away.

III.

The defendants first argue that this court lacks jurisdiction over claims against federal officers acting in their official capacity. Lawson titles his complaint as a "§ 1983 Civil Complaint." Any claim under 42 U.S.C. § 1983 applies only to state and local officials, not to federal defendants such as Kee and McNamara who are Special Deputy United States Marshals. However, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, a plaintiff may bring an action for damages against a federal agent in his individual capacity for violations of constitutional rights. 403 U.S. 388 (1971). A claim under Bivens is the federal counterpart of a § 1983 claim against state and local actors. Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001). We will construe the claims of Lawson, who is proceeding pro se, as a Bivens action.

The defendants next assert that Lawson's civil action is barred under the doctrine of Heck v. Humphrey. Under Heck, If a favorable judgment in a civil action would necessarily challenge the validity of a prior criminal conviction, the

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated. 512 U.S. 477, 484-87 (1994). Lawson asserts that his federal and state convictions were fraudulent. In his complaint, Lawson alleges that his conviction for resisting arrest is a "fraudulent conviction to which I plead (sic) guilty to as a result of each court appointed attorney [who] refused to represent effectively." He also submits numerous documents to challenge the sufficiency of the evidence and the assistance of his counsel related to his October 9, 2009 state conviction for attempted murder and other offenses. To the extent that Lawson is attempting to collaterally attack his underlying state and federal convictions, he is barred by Heck. The complaint against defendants in this regard will be dismissed.

However, success on a claim of excessive force would not undermine his conviction. Lawson could be guilty of forcibly assaulting, resisting, interfering, and impeding federal officials with a dangerous weapon and still have been subject to excessive force. See Lora-Pena v. Federal Bureau of Investigation, 529 F.3d 503, 506 (3d Cir. 2008). As recognized in Lora-Pena, "[i]t is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest." Id. (citing Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997)). Heck does not mandate dismissal of Lawson's Bivens claims for excessive force.

We now turn to the substance of these remaining claims. To succeed on a Bivens claim, a plaintiff must prove that: (1) the defendant violated a right granted to the plaintiff under the Constitution or federal law; and (2) the defendant was acting "under color of" federal law. Bivens, 403 U.S. at 396-97.

Both defendants, as law enforcement officers, raise the defense of qualified immunity. Under the doctrine of qualified immunity, we must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Scott v. Harris, 550 U.S. 372, 377 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). We must also inquire "whether the right was clearly established ... in light of the specific context of the case." Id. Unless both prongs are satisfied, the defendants are entitled to qualified immunity. Under Saucier, district courts were required to address the first question before turning to the second. 533 U.S. at 200-01. More recently, the Supreme Court, receding from Saucier, has held that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

We first address whether a constitutional right was violated. McNamara argues that the claim against him for shooting at Lawson should be dismissed because no seizure

occurred.  The Fourth Amendment applies only when a seizure occurs, in which government actors "by means of physical force or show of authority ... in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  In California v. Hodari D., the Supreme Court held that where police make a show of authority but the subject does not yield, there is no seizure for Fourth Amendment purposes.  499 U.S. 621, 625-27 (1991).  However, when there is a "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," a seizure has occurred.  Id. at 626.

The defendants point out that Lawson does not allege that McNamara touched him during the incident.  While McNamara fired a shot as Lawson successfully fled the scene, Lawson concedes that the shot missed him.  Specifically, Lawson states in his complaint that the bullet entered the rear of his car and exited through his windshield, inches from his head.  Shooting at a fleeing suspect, without actually hitting or stopping the individual, is not a seizure.  See Adams v. City of Auburn Hills, 336 F.3d 515, 520 (6th Cir. 2003); Latta v. Keryte, 118 F.3d 693, 699-700 (10th Cir. 1997); Cole v. Bone, 993 F.2d 1328, 1333 (8th Cir. 1993).  Because it is clear on the face of the complaint that no seizure occurred, there can be no constitutional

violation.[1]  As a result, we will dismiss the excessive force claim against McNamara.

The gravamen of Lawson's claim against Kee involves Kee's use of excessive force when he choked Lawson.  When an excessive force claim arises in the context of an arrest, it is analyzed under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 398-99 (1989).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.  We consider a number of factors, including:  the severity of the crime at issue; whether the suspect poses an immediate threat to the officer's safety or to the safety of others; whether the suspect is actively resisting or attempting to evade arrest; the possibility that the suspect is violent or dangerous; the duration of the police action; whether the police action occurs during an arrest; the possibility that the suspect is armed; and the number of persons with whom the officers must contend.  Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004).  In making our analysis of Lawson's claim of excessive force against Kee, we keep in mind that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense,

---

1.  In contrast, Kee admits that he placed his hands on Lawson's shirt, hands, and arms during the incident.  Based on these actions, a seizure occurred with respect to Kee.

uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Our Court of Appeals has explained that "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007). As previously noted, the court must use a totality of the circumstances analysis. Id. However, a jury must "determine[] the disputed historical facts material to the qualified immunity question." Id. at 210 (quoting Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004)). Where there are unresolved disputes regarding historical facts, "[a] decision on qualified immunity will be premature." Curley, 298 F.3d at 278.

It is undisputed that the underlying crimes charged against Lawson were serious. Lawson was wanted for attempted murder and several other violent offenses. He was known to be dangerous. He actively resisted arrest. Lawson does not dispute the fact that there were a number of bystanders in the area, that he struck the car behind him, and that he fled the scene in his vehicle. As a result, the defendants reasonably believed that Lawson posed a threat to the safety of the officers and other individuals nearby. The force Kee applied while seeking to arrest him did not lead to physical injury. Lawson simply claims

he suffered from emotional distress as a result of the purported choking.

All of these factors weigh in favor of Kee. However, there are two disputed issues of material fact. First, Lawson challenges whether he resisted arrest. In his declaration, Lawson states that he followed the officer's demands. He does not mention refusing to put his car into park or forcibly resisting arrest. However, in his guilty plea colloquy before this court, the government stated that "Lawson forcibly struggled and had physical contact with Kee and Watkins [sic] as the officers attempted to put Mr. Lawson's vehicle in park .... During the struggle, Mr. Lawson was revving his vehicle by hitting the accelerator." When questioned by the court, Lawson agreed to this summary of the incident.

Lawson may not rely on his more recent version of facts as set forth in his declaration to the extent that it is inconsistent with his plea colloquy. Our Court of Appeals has declared that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)). The rationale for this "sham affidavit" doctrine is that:

> If a party who has been examined at length on
> deposition could raise an issue of fact
> simply by submitting an affidavit

-11-

> contradicting his own prior testimony, this
> would greatly diminish the utility of summary
> judgment as a procedure for screening out
> sham issues of fact.

Id. (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). Lawson does not provide an explanation for his later contradictory declaration. Consequently, we accept the version of facts admitted by Lawson at his plea colloquy and find that Lawson actively resisted arrest throughout the struggle with Kee.

The parties, of course, also dispute whether Kee choked Lawson. There is a right to be free from unreasonable, excessive use of force under the Fourth Amendment. Graham, 490 U.S. at 394-96. However, "[n]ot every push or shove ... violates the Fourth Amendment." Id. at 396. Here, Lawson claims in his declaration that Kee choked him and told him to "shut da fuck up." In contrast, Kee denies choking Lawson and maintains that his hands were always on Lawson's arms, hands, and shirt during the struggle. Lawson's plea colloquy is silent on the subject of the choking.

Our Court of Appeals has stated:

> "[a]lthough officers--indeed, any reasonable
> person--should [know] that squeezing the
> breath from a compliant, prone, and
> handcuffed individual despite his pleas for
> air involves a degree of force that is
> greater than reasonable," it is not so
> clearly unreasonable to exert severe force on
> an individual who continues to violently
> resist arrest.

Bornstad v. Honey Brook Twp., 211 Fed. App'x 118, 124 (3d Cir. 2007) (internal citations omitted) (quoting Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003)).  Here, Lawson conceded in his guilty plea colloquy that he actively resisted arrest.  It is undisputed that he was wanted for attempted murder.  There is no allegation that he lost consciousness or was otherwise physically injured by the alleged choking.  Given the totality of the circumstances, no constitutional violation took place even assuming that Kee choked Lawson.  We will therefore grant the motion of Kee for summary judgment on Lawson's excessive force claim.

The cross-motion of Lawson for summary judgment will be denied as he is not entitled to judgment as a matter of law.